**William K. VanCanagan**
**Trent N. Baker**
DATSOPOULOS, MacDONALD & LIND, P.C.
201 West Main Street, Suite 201
Missoula, Montana 59802
Phone: (406) 728-0810
Fax: (406) 543-0134
Email: bvancanagan@dmllaw.com
        tbaker@dmllaw.com
*Attorneys for Core-Mark International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, HELENA DIVISION

| | |
|---|---|
| Core-Mark International, Inc. | Case No. 6:15-cv-00005 |
| Plaintiff, | |
| v. | |
| The Montana Board of Livestock, in its official capacity as head of the Montana Department of Livestock; Jan French, in her official capacity as member of the Montana Board of Livestock; Nina Baucus, in her official capacity as member of the Montana Board of Livestock; John Scully, in his official capacity as vice-chair of the Montana Board of Livestock; Brett DeBruycker, in his official capacity as member of the Montana Board of Livestock; Edward Waldner, in his official capacity as member of the Montana Board of Livestock; Jeffrey Lewis, in his official capacity as member of the Montana Board of Livestock; John Lehfeldt, in his official capacity as chair of the Montana Board of Livestock; Christian Mackay, in his official capacity as Executive Officer of the Montana Department of Livestock; and, Dan Turcotte, in his official capacity as Bureau Chief of the Milk and Egg Bureau of the Montana Department of Livestock, | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| Defendants. | |

# I.  JURISDICTION

1.  Jurisdiction properly vests in this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1343(a), 1367(a) and 42 U.S.C. §§ 1983 and 1988.

2.  Diversity jurisdiction is predicated on the fact that the Plaintiff and Defendants (collectively) are citizens of different states and the amount in controversy exceeds $75,000.

3.  The value of Plaintiff's business in Montana which is damaged by the regulations challenged in this action and Defendants' conduct, and the loss of business that would follow Defendants' enforcement of the regulations in the manner in which they presently enforce same, would far exceed the jurisdictional limit.

# II.  VENUE

4.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) since a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and since each of the Defendants either reside in or may be found in this District.

# III.  FACTS COMMON TO ALL COUNTS

5.  Plaintiff, Core-Mark International, Inc., is a Deleware corporation and a citizen of the state of Washington, with a principal place of business located at N. 1015 Dryer Road, Spokane, Washington, 99212.

6.  The Defendants are all citizens of the State of Montana.

7.  The Defendant, Board of Livestock ("Board"), in its official capacity as department head of the Montana Department of Livestock ("Department"), was at all times relevant and is the duly appointed head of the Department within the context of §2-15-3101, M.C.A., and §2-15-3102, M.C.A., and:

    a.  the establishment of the Board, within the State of Montana finds its genesis in

and is premised upon the exercise of state statutory law;

b. the powers and duties of the Board, within the State of Montana find their genesis in and are premised upon state statutory law; and

c. at all times relevant the Board, as the department head of the Department, was the duly authorized and empowered state agency acting for and on behalf of the State of Montana in promulgating and enforcing state statutory and regulatory authority governing the distribution and wholesale and retail sale of milk in the State of Montana within the context of §81-23-101, M.C.A., et. seq., and §32.8.101, A.R.M., et. seq., within the context of 21 CFR §101.100, et. seq., commonly known as the "Pasteurized Milk Ordinance" or "PMO".

8.  The Defendant, Jan French, in her official capacity as Chair of the Board, at all times relevant:

a. resided in the State of Montana;

b. is or was a duly appointed member of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

c. directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, inter alia, the sale and distribution of milk within the State of Montana; and

d. directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

9.  The Defendant, Nina Baucus, in her official capacity as Vice Chair and member of the Board, at all times relevant:

a. resided in the State of Montana;

b. is or was a duly appointed member of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

c. directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, _inter alia_, the sale and distribution of milk within the State of Montana; and

d. directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

10. The Defendant, John Scully, in his official capacity as member of the Board, at all times relevant:

a. resided in the State of Montana;

b. is or was the duly appointed Vice-Chair of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

c. directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, _inter alia_, the sale and distribution of milk within the State of Montana; and

d. directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

11. The Defendant, Brett DeBruycker, in his official capacity as member of the Board, at all times relevant:

a. resided in the State of Montana;

b. is or was a duly appointed member of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

    c.   directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, <u>inter alia</u>, the sale and distribution of milk within the State of Montana; and

    d.   directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

12. The Defendant, Edward Waldner, in his official capacity as member of the Board, at all times relevant:

    a.   resided in the State of Montana;

    b.   is or was a duly appointed member of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

    c.   directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, <u>inter alia</u>, the sale and distribution of milk within the State of Montana; and

    d.   directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

13. The Defendant, Jeffrey Lewis, in his official capacity as member of the Board, at all times relevant:

    a.   resided in the State of Montana;

    b.   is or was a duly appointed member of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

    c.   directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, <u>inter</u>

*alia*, the sale and distribution of milk within the State of Montana; and

    d.   directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

14. The Defendant, John Lehfeldt, in his official capacity as member of the Board, at all times relevant:

    a.   resided in the State of Montana;

    b.   is or was the duly appointed Chair of the Board, the department head of the Department within the context of §2-15-3101, M.C.A.;

    c.   directed and controlled a duly existing agency of the State of Montana charged with the promulgation, adoption and enforcement of regulations governing, *inter alia*, the sale and distribution of milk within the State of Montana; and

    d.   directed and controlled the Montana agency charged with the enforcement of Montana statutory and regulatory authority governing the distribution of and wholesale and retail sale of milk within the State of Montana.

15. The Defendant, Christian Mackay, in his official capacity as Executive Officer of the Department, at all times relevant:

    a.   resided in the State of Montana;

    b.   is or was the duly appointed Executive Officer of the Department; and

    c.   is or was duly authorized and empowered by the Department to oversee and conduct activities of the Department, including activities of the Milk and Egg Bureau.

16. The Defendant, Dan Turcotte, in his official capacity as Bureau Chief of the Milk and Egg Bureau, at all times relevant:

a.  resided in the State of Montana;

b.  is or was the duly appointed Bureau Chief of the Milk and Egg Bureau, a division of the Department; and

c.  is or was duly authorized and empowered by the Department to regulate and inspect milk producers, milk haulers, dairy product processors and similar entities involved in the production and sale of milk in the State of Montana.

17. The ability of Defendants to direct agents, servants, employees and representatives of said Defendants to enter upon, alter, regulate the use and sale of private property and/or to take private property of private individuals finds it genesis in and is predicated upon the exercise of state statutory, common and regulatory law.

18. At all material times, the Board was a state actor which acted for and on behalf of the Department and which acted under color of state law.

19. At all material times, the Chair, Vice-Chair and members of the Board were state actors who acted for and on behalf of the Board, the Department and who acted under color of state law.

20. At all material times, the Bureau Chief of the Milk and Egg Bureau was a state actor who acted for and on behalf of the Department and who acted under color of state law.

21. The establishment, purposes, and powers and duties of the Board, the Milk and Egg Bureau and the Department within the State of Montana find their genesis in and are premised upon state statutory law.

22. Decisions by the individual members of the Board, in their official capacities as such, and by the Board, the Milk and Egg Bureau and the Department within the State of Montana constitute governmental decisions, and are not subject to being overridden by any department, individual, board or entity associated under state statutory authority.

23. The Defendants, and each of them, have and had at all relevant times, final and absolute authority within the State of Montana to establish reasonable rules and regulations governing the processing, distribution of and wholesale and retail sale of milk within the State of Montana in conformity with applicable state statutory authority.

24. The Plaintiff is now and was at all times relevant engaged in interstate commerce and advertises, distributes and sells, on a wholesale basis, grade A pasteurized milk that has been processed outside of Montana into the State of Montana to numerous retail businesses in the State of Montana.

25. The Plaintiff asserts declaratory and injunctive claims against the above named Defendants for acts taken in their official capacities under color of state law insofar as their actions and omissions implemented and executed a policy statement, ordinance, regulation or decision of the Department which violated the rights of the Plaintiff under federal statutory authority and the United States Constitution.

26. The milk at issue in the present action is grade A milk and not aseptic or ultra-pasteurized as those terms are known and understood within the context of the Pasteurized Milk Ordinance ("PMO"), 21 CFR §101.100, et. seq., §81-23-101, M.C.A., et. seq., and §32.8.101, A.R.M., et. seq.

27. In 1980 the State of Montana enacted §32.8.202, A.R.M., pursuant to which:

32.8.202. TIME FROM PROCESSING THAT FLUID MILK MAY BE SOLD FOR PUBLIC CONSUMPTION

(1) When 12 days or more have passed following pasteurization of a unit of grade A milk, there will be no quantities of that unit of milk sold or otherwise offered for public consumption.

(2) No grade A pasteurized milk may be put in any container marked with a sell-by date which is more than 12 days after pasteurization of the milk for sale in Montana.

(3) Unless otherwise agreed upon, the person who offers the milk for sale to the public is responsible for removing the milk at or before the expiration of the 12 days.

28. Under §32.8.203, A.R.M., Defendants also mandate that all grade A pasteurized milk be marked with a pasteurized date and a single sell-by date.

29. Under §32.8.101(c), A.R.M., the Defendants define the "sell-by date" as "the 12th consecutive day, never to exceed 288 hours, following pasteurization of a unit of milk."

30. Under §32.8.101(d), A.R.M., the "pasteurized date" is the "date a unit of milk completes pasteurization."

31. Grade A pasteurized milk that fails to comply with §32.8.202, A.R.M., or §32.8.203, A.R.M., is subject to seizure and destruction by Defendant, Department, under the authority of §32.8.206, A.R.M.

32. Defendants have in the past seized and/or destroyed milk Plaintiff had sold to retailers in Montana as allegedly violating §32.8.202, A.R.M., et. seq.

33. Under §81-23-405, M.C.A., violations of §§32.8.202 and 32.8.203, A.R.M., are crimes subject to imposition of a fine of $600.00 for each day the regulation is violated.

34. No Montana regulation or statute permits or authorizes Plaintiff or any processor or distributor to seek a variance from strict compliance with the 12 day rule or single date rule even for grade A pasteurized milk that is known or demonstrated to be fresh, safe and healthful for at least 21 days after the date of pasteurization.

35. Under the Department milk regulations, milk processed in Montana for sale and sold out of state do not require a pasteurized date, the Montana 12 day sell-by date, or any code date.

36. Montana processors that process and package grade A milk to sell and sell out of state need not place any pasteurization date or sell-by date on the container whereas all out of state

packagers who sell grade A milk into Montana must place both a pasteurization date and the Montana sell-by date on each container of milk.

37. Montana has adopted the PMO and no "sell-by date" is required by the PMO. Stated and recognized purposes of the PMO include imposing uniform standards and certification of interstate milk shippers and preventing or overcoming interstate trade barriers.

38. Advancements in milk production and processing during the last 35 years have resulted in grade A milk processing technologies that enable shelf lives much longer than twelve days and the 12 day rule and single date rule now bear no rational relationship to promoting the freshness or quality of milk sold in Montana or the protection of the health and well-being of Montana citizens.

39. The shelf life of grade A milk is now much longer than 12 days and enforcement of the 12 day rule results in the waste or destruction of good milk.

40. The shelf life of grade A milk varies within and among processors, 18 to 21 days is a common range at this time, and processors continue efforts to extend that shelf life.

41. Processors know the shelf life of their grade A milk because they regularly perform extensive stress testing on their grade A milk after pasteurization to determine a code date appropriate to insure that consumers have a positive experience with the processor's milk ("processor's code date").

42. Most other states, including surrounding states such as Washington, Idaho and Oregon, and many of the largest milk producing states, allow or require processors to label their grade A milk with the processor's code date, and have no requirement that such a product bear only a single arbitrary "sell-by date".

43. In 2002, Inland Northwest Dairies, a processor of Darigold milk, requested and received the Department's authorization to sell in Montana milk processed in its Spokane plant

and labeled with both the Montana 12-day "sell-by" code date and the processor-determined code date used on Darigold milk sold in other states, a labeling process referred to as "dual dating" or the "dual dating exemption."

44. Plaintiff was the distributor of Inland's milk in 2008, when the Department rescinded the dual dating exemption.

45. After unsuccessful attempts to negotiate a resolution, Core-Mark filed suit against the Department in United States District Court for the District of Montana, Case No. CV-08-39-GF-SEH-RHS, challenging the validity and constitutionality of the 12-day Rule and seeking an injunction against its enforcement.

46. Core-Mark and the Department subsequently agreed to dismiss the federal court case without prejudice and conduct an administrative evidentiary hearing, presided over by an independent hearings examiner, on a proposal by Core-Mark to repeal or amend the 12-day Rule to allow processors to determine and label their milk with the appropriate code date, subject to oversight by the Department.

47. The administrative proceedings were adversarial with the Plaintiff on one side, and the Department and two processors with in-state facilities, Country Classic Dairies, Inc., and Meadow Gold, a division of Dean Foods Company.

48. Mr. John Sullivan, the independent hearing examiner selected by the parties, presided over pre-hearing discovery and motion practice, presided over six days of hearings, listened first-hand to 1,180 pages of testimony, oversaw the submission of extensive documentary evidence, and reviewed extensive post-hearing briefs, findings and conclusions submitted by the parties.

49. Mr. Sullivan issued his 24-page decision on October 27, 2011, concluding that the 12-day Rule was an invalid exercise of the Department's statutory authority and recommending it

be amended.  Hearing Examiner's Proposed Decision (October 27, 2011), attached hereto as Exhibit A.

50. On May 30, 2012, the Department ignored that decision and without written findings or a formal written decision, voted unanimously to keep the 12-day Rule in place.

51. Core-Mark then sought judicial review of the Department's disregard of the hearing examiner's decision in the Montana state courts, and the Montana Supreme Court, in *Core-Mark Int'l, Inc. v. Mont. Bd. of Livestock*, 2014 MT 197, 376 Mont. 25, 329 P.3d 1278, held that the administrative proceeding was not a contested case and the Department was free to ignore the Hearing Examiner's decision.

52. By letter dated December 24, 2014 the Defendant, Christian Mackay, Department Executive Officer, informed the Plaintiff that as of January 23, 2015 (the Department later corrected this date to January 29, 2015) the Department would rescind the dual dating exemption and begin enforcing the single date rule, and Plaintiff would no longer be allowed to sell milk in Montana labelled with both the Montana sell-by date and the processor code date, and that all grade A milk sold in Montana can be marked only with the Montana 12 day sell-by date.

53. By letter dated January 27, 2015, Core-Mark requested through counsel that the Board conduct pursuant to Mont. Admin. R., § 32.2.102 an investigation into the harm caused by its rescission of the dual dating exemption and enforcement of the single date rule as threatened in the December 24, 2014 letter.

54. On January 28, 2105 Core-Mark filed its original complaint in this matter and subsequently sought a temporary restraining order and preliminary injunction.

55. The processor of Core-Mark's milk, which had previously indicated that it would not label the containers of milk with only the Montana sell-by date stamp, suddenly changed its

position and indicated that it would provide a single date stamped product to Core-Mark.

56. Core-Mark withdrew its motion for temporary restraining order and preliminary injunction so it could discuss the terms of the change with the processor and review the viability of such a program.

57. Core-Mark subsequently determined that the terms of the offer passed through to Core-Mark the costs that previously made providing a single date stamped product financially unfeasible for the processor.

58. The Board met on February 25, 2015, and Defendant Lehfeldt, Board Chair, agreed to conduct an investigation pursuant to Core-Mark's request and to provide the results of the investigation.

59. Core-Mark believes no investigation was completed and no results were provide, but by letter dated April 1, 2015, Defendant, Christian Mackay, Department Executive Officer, informed the Plaintiff that on April 22, 2015 the Department would rescind the dual dating exemption begin enforcing the single date rule.

60. Since 2002, the containers of grade A pasteurized milk that Plaintiff has sold into the state of Montana have been dual dated pursuant to the dual dating exemption, meaning they are labelled with two dates in addition to the pasteurization date: 1) the "Montana sell-by date"; and 2) the processor's code date applicable in neighboring states such as Washington, Idaho and Oregon.

61. At all times relevant, the Grade A pasteurized milk that Plaintiff has shipped into Montana for sale is healthful and completely safe for human consumption in excess of 21 days after its pasteurization date.

62. Enforcement of the single date rule and 12 day rule unnecessarily increase costs to Plaintiff and other interstate processors and distributors that sell milk in Montana and

surrounding states by forcing them to separately package, label, and inventory milk destined for sale in Montana and to make more frequent and smaller deliveries to their retail customers in Montana.

63. Enforcement of the single date rule and 12 day rule forecloses Plaintiff from continuing to sell milk in Montana since the interstate shipping and sale of milk in Montana is made financially feasible only because its trucks service Montana as well as neighboring states and since it is not financially feasible for Plaintiff or its processor to separately package, label and inventory milk which will become unique to the Montana market insofar as they could only bear the Montana sell-by date and not the processor code date applicable to Washington, Idaho and Oregon, all to Plaintiff's irreparable harm.

64. Since Plaintiff ships pasteurized grade A milk in interstate commerce from outside Montana into Montana for sale, all of such time consumed in shipping serves to erode the period of time during which it may be offered for sale whereas similarly situated in-state milk distributors are not subject to such a truncated shelf life.

65. As written and as applied to Plaintiff, the 12 day rule and the single date rule violate the Privileges and Immunities Clause, U.S. Const., Art. IV, §2; the Commerce Clause, U.S. Const. Art. I § 8, Cl. 3; the rights to freedom of speech and association under the First Amendment to the United States Constitution and Fifth Amendment to the United States Constitution; substantive due process under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and the Equal Protection Clause under the Fourteenth Amendment, because they bear no rational relationship to a permissible governmental purpose or objective, unfairly discriminate against Plaintiff and its ability to engage in commerce in the State of Montana, deprive Plaintiff of the same rights and privileges enjoyed by in-state competitors, require Plaintiff to provide Montana consumers with inaccurate information regarding the shelf

life of its products, and prevent Plaintiff from providing Montana consumers with true and accurate information regarding the shelf life of its products.

66. The 12 day rule and the single date rule, both as written and as applied to Plaintiff, serve to deprive Plaintiff of its property without just compensation in violation of the Fifth Amendment to the United States Constitution.

67. Defendants', and each of their, conduct constitutes a taking of Plaintiff's property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

68. The Defendants and each of them have enacted and applied to Plaintiff the 12 day rule and the single date rule which violate Plaintiff's rights as set forth herein.

69. As a direct and proximate result of Defendants', and each of their, enactment and application of the 12 day rule and the single date rule to Plaintiff, it has suffered severe financial and other harms including, but not limited to, the destruction of fresh and healthful grade A pasteurized milk solely because it does not have a single "sell by date" or has passed the arbitrary twelve day "sell by date".

70. Defendants, and each of them, purposefully, willfully and intentionally engaged in actions which sought to and actually did deprive the Plaintiff of privileges, rights and immunities secured and guaranteed by the Constitution and the laws of the United States.

71. Defendants', and each of their, misuse of power was initially made possible because each of such Defendants was clothed with and acting under and pursuant to the color of state law.

72. Defendants', and each of their, deprivations of Plaintiff's rights, privileges and immunities, secured and guaranteed by the Constitution and the laws of the United States, was a natural consequence of each of their actions and conduct.

73. The Defendants have illegally adopted, enforced, and threatened to enforce, the 12 day rule and single date rule against Plaintiff and, consequently, Plaintiff will continue to suffer immediate, irreparable and permanent harm if Defendants are not enjoined from continuing to do so.

74. Plaintiff has no adequate alternative remedy at law and there is no danger that the public will be deprived of valuable services or benefits or will otherwise suffer any injury if an injunction is issued but, rather, the public welfare would be furthered were Defendants to be enjoined from further enforcing the 12 day rule and single date rule as to Plaintiff.

75. Predicated upon the acts set forth herein, since Plaintiff lacks adequate remedy at law and due to the irreparable harm which Plaintiff has suffered and will continue to suffer, it is respectfully requested that this Honorable Court issue an injunction restraining Defendants and their agents, servants, representatives, employees, officers and directors from enforcing or seeking to enforce the 12 day rule and single date rule as to the Plaintiff and to order Defendants to refrain from doing so in the future.

76. Defendants', and each of their, conduct and constitutional violations referenced herein give rise to Plaintiff's claims for declaratory and injunctive relief under 42 U.S.C. §1983.

### COUNT I: 42 U.S.C. § 1983
### (Commerce Clause, U.S. Const., Art. I, §8, Cl. 3:
### Declaratory and Injunctive Relief as to all Defendants)

77. Plaintiff realleges and reaffirms all allegations contained in paragraphs 1 through 76 above as if fully set forth herein.

78. The 12 day rule and single date rule as written and as applied present an anti-competitive and discriminatory burden on interstate commerce to the extent that it prohibits interstate milk producers, processors, distributors and wholesalers from competing on even terms with in-state competitors.

79. Enforcement of the 12 day rule and single date rule as to Plaintiff violates the Commerce Clause insofar as such enforcement has been driven by Defendants' intent and purpose to discriminate against out of state milk producers, processors and distributors in order to benefit in-state distributors and processors.

80. The 12 day rule and single date rule as written and as applied discriminate against and unduly burden interstate commerce without any commensurate local benefit with respect to the protection of the freshness or healthfulness of the Montana milk supply or the health and well-being of the citizens of Montana, thereby violating the Commerce Clause, Art. I, §8, Cl. 3 of the United States Constitution.

81. The 12 day rule and single date rule are not essential for the protection of local interests and place a discriminatory burden on interstate commerce in violation of the Commerce Clause.

82. Absent a variance mechanism from strict compliance with the 12 day rule, the Plaintiff and other out of state milk producers, processors and distributors are being financially harmed and will be coerced into purchasing milk pasteurized in Montana rather than in another state solely in order to remain competitive with Montana distributors.

83. Absent a variance mechanism from the 12 day rule and single date rule and absent any demonstrated history of health complaints from their non-enforcement, as written and as now those rules impose a burden on interstate commerce that is clearly excessive in relation to any putative local benefits.

84. The 12 day rule and single date rule as written and as applied, unconstitutionally discriminate against out of state milk producers, processors and distributors to the benefit of their Montana competitors.

85. The 12 day rule and single date rule place further undue burdens on interstate

commerce to the extent that foreign milk distributors are and will continue to be harmed by its anti-competitive and protectionist efforts.

86. By its operation and practical effect the 12 day rule and single date rule essentially amounts to regulations that requires Plaintiff to obtain its grade A pasteurized milk within the State of Montana in order to be able to compete fairly with its competitors within the State of Montana thereby barring the import of such milk entirely.

87. Preservation of local industry by protecting it from the rigors of interstate competition, by the enactment and strict enforcement of the 12 day rule and single date rule, is the hallmark of economic protectionism that the Commerce Clause forbids.

88. The 12 day rule and single date rule are artificial, arbitrary and bear no rational relationship to protecting the health and well-being of Montana citizens or the public in general given widespread advancements in milk processing technology and techniques that render pasteurized grade A milk healthful for far longer than 12 days.

89. As written and as applied to Plaintiff, the 12 day rule and single date rule are irrational, arbitrary, capricious, whimsical and shocking to the conscience since it bears no rational relationship to any permissible government intent or purpose.

90. Defendants', and each of their, conduct in enacting and applying the 12 day rule and single date rule to Plaintiff constituted action on their part which was legally irrational since there is no nexus between their conduct and any legitimate governmental interest.

91. By the enactment and application of the 12 day rule and single date rule to Plaintiff and the consequent unnecessary destruction and/or seizure of healthful and safe grade A pasteurized milk, Montana residents are being deprived of the benefits of interstate competition for the sale of such goods all to the detriment of such residents since the practical effect is to drive up the cost of such goods to all those who purchase them within this state, all without any

rational governmental basis, while unduly burdening interstate commerce and while depriving Plaintiff of the privileges and immunities secured to it under the Constitution and federal statutory authority, including, but not limited to, 42 U.S.C. §1983.

92. The Plaintiff seeks declaratory judgment that the 12 day rule and single date rule are unconstitutional as written and as applied insofar as it is violative of the Commerce Clause.

<u>**COUNT II: 42 U.S.C. § 1983**</u>
<u>**(Due Process Clause: Declaratory and Injunctive Relief as to all Defendants)**</u>

93. Plaintiff realleges and reaffirms all allegations contained in paragraphs 1 through 92 above as if fully set forth herein.

94. Plaintiff asserts the instant claim against the Defendants, in their official capacities, insofar as they adopted, promulgated, executed, enforced, and implemented an unconstitutional policy, ordinance, regulation, or decision.

95. At all material times, the Defendants were state actors, acting under the color of state law.

96. The acts and omissions of the Defendants in enacting and applying the 12 day rule and single date rule to Plaintiff represent the use and employment of whimsical, vexatious, capricious, egregious, arbitrary, inequitable, and oppressive governmental power such that it violated and continues to violate the Plaintiff's substantive and procedural rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution..

97. Defendants' conduct represents an abuse of governmental power which shocks the conscience, was legally irrational insofar and does not substantially advance any legitimate state interests.

98. The 12 day rule and single date rule as written and applied violate the Due Process Clause since they are legally and scientifically irrational, since they further no permissible state

interest and since they arbitrarily establish constraints on Plaintiff's ability to engage in a common occupation, the interstate sale of goods, in a manner inconsistent with the manner in which Plaintiff's in-state competitors are treated.

99. Plaintiff seeks declaratory judgment that the 12 day rule and single date rule are unconstitutional as written and as applied for the reasons set forth above and because the enactment and application of the 12 day rule and single date rule denies Plaintiff and other foreign milk producers similarly situated as Plaintiff due process of the law under the Due Process Clause of the Fourteenth Amendment to the United States Constitution since they create arbitrary classifications and deprive foreign milk producers of their traditional and constitutionally protected rights and privileges to sell goods on equal footing with in-state competitors without a compelling or rational state interest.

100.    Plaintiff seeks declaratory judgment that the 12 day rule and single date rule are unconstitutional as written and as applied for the reasons set forth above and because Defendants' conduct in enacting and applying the 12 day rule and single date rule to the Plaintiff operates so as to deprive Plaintiff and other milk producers similarly situated as the Plaintiff of certain inalienable and fundamental rights, including the opportunity to market and sell milk, a common occupation, in derogation of Plaintiff's liberty and property interests and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT III: 42 U.S.C. § 1983
### (Equal Protection Clause: Declaratory and Injunctive Relief as to all Defendants)

101.    Plaintiff realleges and reaffirms all allegations contained in paragraphs 1 through 100 above as if fully set forth herein.

102.    Enactment and enforcement of the 12 day rule and single date rule as to Plaintiff violates the Equal Protection Clause insofar as such enforcement has been driven by

Defendants' intent, purpose and practical effect to discriminate against out of state milk processors and distributors and in order to benefit in-state processors and distributors, all while lacking a rational relationship to a permissible governmental interest.

103.     The 12 day rule and single date rule are unconstitutional as written and as applied because they deny Plaintiff and other foreign milk processors and distributors similarly situated as Plaintiff equal protection of the law under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution since they create arbitrary classifications and deprive foreign milk producers of their traditional and constitutionally protected rights and privileges to sell goods on equal footing with in-state competitors without a compelling or rational state interest.

104.     Defendants' conduct in applying the 12 day rule and single date rule to the Plaintiff operates so as to deprive Plaintiff and other milk processors and distributors similarly situated as the Plaintiff of certain inalienable and fundamental rights, including the opportunity to market and sell milk, a common occupation, in derogation of Plaintiff's liberty and property interests and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### COUNT IV: 42 U.S.C. § 1983
### (Privileges and Immunities Clause, U.S. Const., Art. IV, §2: Declaratory and Injunctive Relief as to all Defendants)

105.     Plaintiff realleges and reaffirms all allegations contained in paragraphs 1 through 104 above as if fully set forth herein.

106.     The enactment and application of the 12 day rule and single date rule violate U.S. Const., Art. IV, §2 insofar as they discriminate against the Plaintiff, and against all others similarly situated, thereby depriving Plaintiff of the advantages resulting from citizenship in Montana.

107.     The 12 day rule and single date rule, as written and as applied, constitute regulations which discriminate against non-residents solely for reasons of economic protectionism in light of scientific advancements in milk processing and the absence of any variance procedure from the strict application of said rules.

108.     Application of the 12 day rule and single date rule to the Plaintiff and to all those similarly situated denies Plaintiff of the privileges and immunities to which the citizens of the State of Montana would be entitled under like circumstances.

109.     Application of the 12 day rule and single date rule to the Plaintiff constitutes discrimination by the Defendants with respect to fundamental privileges of citizenship.

110.     The 12 day rule and single date rule as written and as applied constitute statutory classifications based upon the fact of non-citizenship which discriminate against the Plaintiff and against all others similarly situated without any rational basis to conclude that Plaintiff and those similarly situated constitute a peculiar source of evil at which the 12 day rule and single date rule are aimed.

111.     The 12 day rule and single date rule as written and as applied to the Plaintiff deny Plaintiff and all those similarly situated of being able to engage in commerce within the State of Montana upon the same footing as citizens of the State of Montana thereby depriving Plaintiff and those similarly situated of the advantages resulting from citizenship in the State of Montana.

112.     The Privileges and Immunities Clause, U.S. Const., Art. IV, §2, bars the discrimination effectuated by the 12 day rule and single date rule since there is no substantial reason for discrimination beyond the mere fact that the Plaintiff and all those similarly situated are citizens of other states.

113.     The degree of discrimination effectuated by the 12 day rule and single date rule

with respect to the Plaintiff and all those similarly situated bears no close relationship to any valid independent reason for such discrimination and therefore violates U.S. Const., Art. IV, §2.

114.     The differential treatment effectuated by the 12 day rule and single date rule with respect to the Plaintiff and all those similarly situated is not predicated upon any substantial reason for the difference in treatment with respect to other citizens of Montana and the discrimination practiced against the Plaintiff bears no substantial relationship to any permissible state objective or goal.

115.     The Defendants, and each of them, knew or should have know that their actions violated, and would continue to violate, the Plaintiff's rights, immunities and privileges secured and guaranteed by the Constitution and the laws of the United States.

## COUNT V: 42 U.S.C. § 1983
### (First Amendment Rights:
### Declaratory and Injunctive Relief as to all Defendants as to all Defendants)

116.     Plaintiff realleges and reaffirms all allegations contained in paragraphs 1 through 115 above as if fully set forth herein.

117.     Commercial speech is protected under the First Amendment of the United States Constitution.

118.     The inclusion or exclusion of a "pasteurized date," "sell-by date," processor code date or other indicator of quality and shelf-life on Plaintiff's products constitutes protected commercial speech.

119.     Plaintiff is entitled to the full protection of the First Amendment of the United States Constitution against Defendants' efforts to suppress their commercial speech.

120.     The 12 day rule and single date rule as written and as applied suppress Plaintiff's right to freely associate with out of state producers and processors.

121.    The 12 day rule and single date rule as written and as applied suppress Plaintiff's protected commercial speech in that it requires Plaintiff to provide Montana consumers with inaccurate information regarding the quality and shelf life of its products, and prevents the Plaintiff from providing Montana consumers with true and accurate information regarding the quality and shelf life of its products.

122.    The 12 day rule and single date rule as written and as applied operate as a "prior restraint" on protected commercial speech in violation of the First Amendment, and are not the "least restrictive" alternative to regulate commercial speech.

123.    The 12 day rule and single date rule as written and as applied constitute a concerted effort to damage the Plaintiff and suppress and restrain the Plaintiff's constitutionally protected commercial speech by applying an undefined and arbitrary standard to that speech in violation of the Fifth Amendment.

124.    Plaintiff's rights under the First Amendment are violated because: (a) Defendants have engaged in a concerted and targeted effort to suppress Plaintiff's use of its future commercial speech; (b) Defendants have not and cannot articulate a compelling reason for the 12 day rule and single date rule; (c) the burden Defendants have imposed and seek to impose on Plaintiff's commercial speech is unnecessary; and (d) the 12 day rule and single date rule are not the least restrictive means to protect consumers from harm.

125.    There is no substantial or legitimate reason for Defendants' enactment and application of the 12 day rule and single date rule, which have no variance or procedural safeguards and are being used by the Montana Board of Live Stock to target those individuals and entities that are not located within the state.

126.    Defendants' conduct does not advance a substantial or legitimate state interest in a direct or material way.

127.     There are far less restrictive ways to protect consumers from harm other than the enactment and application of the 12 day rule and single date rule.

128.     As a result of Defendants' enactment and application against Plaintiff of the 12 day rule and single date rule in violation of the First Amendment, Plaintiff has been subject to and is being threatened by Defendants with unlawful state government action, and Plaintiff has suffered and will continue to immediate, irreparable and permanent harm unless the enjoins Defendants from continuing to do so.

WHEREFORE, pursuant to 42 U.S.C. §1983 Plaintiff, Core-Mark International, Inc., demands that this Honorable Court:

a.   Declare and hold that, as written and as applied to the Plaintiff, the 12 day rule and single date rule are null, void and unconstitutional insofar as they violate the Commerce Clause, Art. I, §8, Cl. 3 of the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Privileges and Immunities Clause, U.S. Const., Art. IV, §2; and Plaintiffs rights to freedom speech and association guaranteed by the First Amendment to the United States Constitution;

b.   Declare and hold that the Defendants' decision to apply the 12 day rule and single date rule to Plaintiff must be both annulled and reversed insofar as such conduct is violative of the Commerce Clause, Art. I, §8, Cl. 3 of the United States Constitution, Equal Protection Clause of the Fourteenth Amendment; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Privileges and Immunities Clause, U.S. Const., Art. IV, §2; and Plaintiffs rights to freedom speech and association guaranteed by the First Amendment to the United States Constitution;

c.   Declare and hold that the application of the 12 day rule and single date rule to the Plaintiff deprives Plaintiff of its rights under the Commerce Clause, Art. I, §8, Cl. 3 of the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Privileges and Immunities Clause, U.S. Const., Art. IV, §2; and Plaintiffs rights to freedom speech and association guaranteed by the First Amendment to the United States Constitution;

d.   Declare and hold Defendants' conduct in applying the 12 day rule and single date rule to Plaintiff is null, void and unconstitutional and of no further force and effect;

e. Declare and hold that the 12 day rule and single date rule cannot hereafter be employed or utilized by the Defendants relative to Plaintiff's goods;

f. Temporarily restrain and enjoin Defendants from further enforcing or seeking to enforce the 12 day rule and single date rule as to Plaintiff;

g. Permanently restrain and enjoin Defendants from further enforcing or seeking to enforce the 12 day rule and single date rule as to Plaintiff;

h. That the Court declare, adjudge and decree that the 12 day rule and single date rule as written and as applied to the Plaintiff are unconstitutional;

i. That Defendants as well as their respective officers, directors, agents and employees and all other persons acting and planning to act on behalf thereof or in concert therewith, be perpetually enjoined and restrained from in any manner, directly or indirectly, continuing, maintaining or renewing any attempt to apply the 12 day rule and single date rule to the Plaintiff and from adopting or following any practice, plan, program or design having a similar design, purpose or effect;

j. Award Plaintiff attorney's fees pursuant to 42 U.S.C. §1988; and

k. Award such other and further relief as this Honorable Court deems meet and just.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues to triable.

DATED this 2nd day of April, 2015.


/s/ William K. VanCanagan
William K. VanCanagan
DATSOPOULOS, MacDONALD & LIND, P.C.
Attorneys for Plaintiff

/s/ Trent N. Baker
Trent N. Baker
DATSOPOULOS, MacDONALD & LIND, P.C.
Attorneys for Plaintiff