BENJAMIN REED
Assistant Attorney General
Agency Legal Services Bureau
1712 Ninth Avenue
P.O. Box 201440
Helena, MT 59620-1440
Telephone: (406) 444-2026
Facsimile: (406) 444-4303
benreed@mt.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CORE-MARK INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE MONTANA BOARD OF LIVESTOCK, in its official capacity as head of the Montana Department of Livestock; JAN FRENCH, in her official capacity as member of the Montana Board of Livestock; NINA BAUCUS, in her official capacity as member of the Montana Board of Livestock; JOHN SCULLY, in his official capacity as Vice-Chair of the Montana Board of Livestock; BRETT DEBRUYCKER, in his official capacity as member of the Montana Board of Livestock; EDWARD WALDNER, in his official capacity as member of the | Case No. 6:15-cv-00005<br><br>**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Montana Board of Livestock; JEFFREY LEWIS, in his official capacity as member of the Montana Board of Livestock; JOHN LEHFELDT, in his official capacity as Chair of the Montana Board of Livestock; CHRISTIAN MACKAY, in his office capacity as Executive Officer of the Montana Department of Livestock; and, DAN TURCOTTE, in his official capacity as Bureau Chief of the Milk and Egg Bureau of the Montana Department of Livestock,

        Defendants.

## INTRODUCTION

This matter came for hearing on the 16th through the 18th days of June, 2015, for an evidentiary hearing. Trent N. Baker, Darla Keck, and William VanCanagan appeared for the Plaintiff, and Benjamin Reed appeared for Defendants. Both parties presented evidence regarding whether the preliminary injunction should be entered. Pursuant to this Court's Order of June 19, 2015 (Doc. 45), and the subsequent Order of June 26, 2015 (Doc. 49), Defendants file the following:

## FINDINGS OF FACT

1.    The Plaintiff in this matter is Core-Mark International, Inc. ("Core-Mark"). Core-Mark is a sales and marketing company distributing grocery

products, including milk mostly to convenience stores, throughout the United States. It has a division headquarters in Spokane, Washington, out of which it distributes its product across Montana. (Source: Huelskamp Tr. 14, 15)

2. The Defendants in this matter are the Montana Board Of Livestock, in its official capacity as head of the Montana Department of Livestock; Jan French, in her official capacity as member of the Montana Board of Livestock; Nina Baucus, in her official capacity as member of the Montana Board of Livestock; John Scully, in his official capacity as Vice-Chair of the Montana Board of Livestock; Brett Debruycker, in his official capacity as member of the Montana Board of Livestock; Edward Waldner, in his official capacity as member of the Montana Board of Livestock; Jeffrey Lewis, in his official capacity as member of the Montana Board of Livestock; John Lehfeldt, in his official capacity as Chair of the Montana Board of Livestock; Christian Mackay, in his official capacity as Executive Officer of the Montana Department of Livestock; and Dan Turcotte, in his official capacity as Bureau Chief of the Milk and Egg Bureau of the Montana Department of Livestock ("Board") and the Montana Department of Livestock ("Department"). The Board is the head of the Department. Mont. Code Ann. § 2-15-3101.

3. The Board has promulgated Administrative Rule of Montana 32.8.202, which describes the time from processing that fluid milk may be sold for

public consumption. The Rule states that

> (1) When 12 days or more have passed following pasteurization of a unit of grade A milk, there will be no quantities of that unit of milk sold or otherwise offered for public consumption.
> (2) No grade A pasteurized milk may be put in any container marked with a sell-by date which is more than 12 days after pasteurization of the milk for sale in Montana.
> (3) Unless otherwise agreed upon, the person who offers the milk for sale to the public is responsible for removing the milk at or before the expiration of the 12 days.

4. The Board has interpreted this Rule to require that the sole date on HTST milk be a sell-by date that is twelve days from the date of pasteurization; and at that time, the seller of the milk must remove it from shelf, and it can no longer be sold to the consumer and must be destroyed. (Source: Huelskamp Tr. 25)

5. This rule's two components are referred to as the 12-day rule (which requires that there be a 12-day stamp), and the single-date rule, which requires that there be solely a single date. (Source: Briefs and testimony generally)

6. An employee of the Department made an exemption to this requirement in 2002 for a single milk producer, Inland Dairy. (Source: Gerhardt Tr. 80; Ex. 102)

7. The Board revoked this exemption in 2008. (Source: Gerhardt Tr. 79; Ex. 104)

8. The record does not reflect that the Board has given any other such

exemption in the history of the single-date rule. (Source: Briefs and testimony generally)

/

9. Inland Dairy's partner and successor, Darigold, failed to comply with the Board's revocation. (Source: Gerhardt Tr. 84-85, 94-95)

10. There is no substantial evidence in the record that the exemption was ever formally extended to Core-Mark.

11. There is substantial evidence in the record that other out-of-state milk producers comply with the single-date regulation. (Source: Turcotte Tr. 55-57)

12. There is substantial evidence in the record that Core-Mark could procure single-date stamped milk from its current milk producer. (Source: Huelskamp Tr. 55-58)

13. There is no substantial evidence in the record that Core-Mark has made a meaningful inquiry into the cost of procuring single-date stamped milk.

14. There is no substantial evidence in the record as to the precise amount of the damages Core-Mark alleges it will suffer if it complies with Montana's single-date requirement.

15. There is substantial evidence in the record that the damages Core-Mark alleges it will suffer if it complies with Montana' single-date requirement are purely financial. (Source: Huelskamp Tr. 61-62)

16. There is no substantial evidence in the record showing that the single-date rule disadvantages out-of-state distributors and inhibits the flow of milk into Montana. (Source: Lee Tr. 93-97, 99-107, 109-110; Ex. 501-503)

17. There is no substantial evidence in the record showing that Core-Mark, nor any of retailers Core-Mark serves, currently fails to comply with the 12-day rule.

## CONCLUSIONS OF LAW

1. Issuance of a preliminary injunction is governed by Fed. R. Civ. P. 65.

2. Core-Mark asserts it seeks a prohibitory injunction preserving the status quo of prohibiting the […] Defendants […]"revoking Core-Mark's "dual date exemption""  Doc. 13 at 2.

3. The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies. *Sampson v. Murray*, 415 U.S. 61, 88, 94 S. Ct. 937, 951, 39 L. Ed. 2d 166 (1974); *Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1202.

4. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

5. The 9th Circuit recognizes two different legal standards for

preliminary injunctions that are prohibitory in nature. The movant must meet one of the two. *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

/

6. A Plaintiff seeking a prohibitory preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter* at 24-25.

7. In the alternative, a party seeking a preliminary injunction must establish, *inter alia*, that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter* at 20. Under this standard, a court should also consider the effect of the preliminary injunction on the status quo. *Stanley v, University of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994).

8. Mere "possibility of irreparable harm" is insufficient. *Winter* at 22.

9. A plain reading of Administrative Rule of Montana 32.8.202 indicates that Core-Mark neither has, nor can, violate that Rule. Under (1), it neither sells nor otherwise offers milk for public consumption. Under (2), it does not put grade A pasteurized milk may be put in containers, nor does it mark containers with any sell-by date. And under (3), Core-Mark does not offer the milk for sale to the public.

10. This indicates that there is no existing controversy for the Court to

resolve and that no issue is ripe for resolution; this renders any ruling on this matter an inappropriate advisory opinion on a hypothetical issue. *U.S. Const., art. III* (federal courts cannot give advisory opinions; a case or controversy must exist wherein the court can provide relief and not just opine what the law would be under hypothetical circumstances); *see also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 30 L. Ed. 2d 413 (1971) (federal courts have "no power to issue advisory opinions"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

11. Monetary harm is not normally considered irreparable. *Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1202.

12. The character of the monetary damages Core-Mark alleges it would suffer are purely speculative.

13. To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (2013).

Although preliminary relief may be ordered to prevent harm to a movant's reputation and goodwill, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence." *Herb*

*Reed*, 736 F.3d at 1250.

14. The injunction Core-Mark seeks is, in substance, mandatory, and would require the Board to act in a particular way: to not apply its regulatory regime to Core-Mark. Such an outcome clearly disrupts the status quo.

15. On the record before the Court, Plaintiff has not made the requisite "clear showing" to justify an upset of the status quo or to mandate the Board's carving out of an exception solely for Core-Mark. *Winter* at 22.

16. The facts and the law do not clearly favor the Plaintiff's position.

DATED this 15th day of July, 2015.

        AGENCY LEGAL SERVICES BUREAU
        1712 Ninth Avenue
        P.O. Box 201440
        Helena, MT 59620-1440

        COUNSEL FOR DEFENDANTS

        By: /s/ Benjamin Reed
            BENJAMIN REED
            Assistant Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I hereby certify that on July 15, 2015, a copy of this Proposed Findings of Fact and Conclusions of Law was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| ____ | Hand Delivery |
| ____ | Mail |
| ____ | Overnight Delivery Service |
| ____ | Fax |
| ____ | E-Mail |

1. Clerk, U.S. District Court

2. William K. VanCanagan
   Trent N. Baker
   Datsopoulos, MacDonald & Lind, P.C.
   201 West Main Street, Suite 201
   Missoula, MT 59802

By: /s/ Benjamin Reed
BENJAMIN REED
Assistant Attorney General
Agency Legal Services Bureau
Counsel for Defendants

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE 10