## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

**FILED**

AUG 3 1 2015

Clerk, U.S. District Court
District Of Montana
Helena

Core-Mark International, Inc.,

Plaintiff,

vs.

No.  CV 15-05-H-SEH

The Montana Board of Livestock, in
its official capacity as head of the
Montana Department of Livestock; Jan
French, in her official capacity as
member of the Montana Board of
Livestock; Nina Baucus, in her official
capacity as member of the Montana
Board of Livestock; John Scully, in his
official capacity as vice-chair of the
Montana Board of Livestock; Brett
DeBruycker, in his official capacity as
member of the Montana Board of
Livestock; Edward Waldner, in his
official capacity as member of the
Montana Board of Livestock; Jeffrey
Lewis, in his official capacity as
member of the Montana Board of
Livestock; John Lehfeldt, in his
official capacity as chair of the
Montana Board of Livestock; Christian
Mackay, in his official capacity as
Executive Officer of the Montana
Department of Livestock; and, Dan
Turcotte, in his official capacity as
Bureau Chief of the Milk and Egg
Bureau of the Montana Department of
Livestock,

Defendants.

**MEMORANDUM
AND ORDER**

## INTRODUCTION

This case arises as a challenge to the State of Montana's administrative rules governing the number of days after pasteurization that milk can be sold to the public and how milk containers can be labeled.[1]  Plaintiff, Core-Mark International, Inc. ("Core-Mark"), asserts this Court has diversity jurisdiction and challenges the validity of the rules under the U.S. Constitution and 42 U.S.C. § 1983.[2]  Plaintiff seeks declaratory and injunctive relief as to all Defendants.[3]

Plaintiff initially requested a temporary restraining order and a preliminary injunction but withdrew it.[4]  Plaintiff renewed the motion.[5]  The Court held an evidentiary hearing on June 16, 17, and 18, 2015.[6]  Exhibits were admitted into evidence and live testimony was taken from numerous individuals.  Supplemental and reply briefs were filed on July 15 and 23, 2015.[7]

_____

[1] *See* Admin. R. Mont. §§ 32.8.202, 203 (2015).

[2] *See* Doc. 8 ¶¶ 1-3, 92, 100, 104, 115, and 128.

[3] *See* Doc. 8 at 25-26.

[4] *See* Docs. 3, 6.

[5] *See* Doc. 13.

[6] *See* Docs. 46 (Transcript of Evidentiary Hearing on Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary Injunction Volume 2 of 2, June 17-18, 2015 (Hr'g Tr. vol. 2)) and 47 (Transcript of Evidentiary Hearing - Volume I, June 16, 2015 (Hr'g Tr. vol. I)).

[7] *See* Docs. 53, 55, 57, and 58.

## BACKGROUND

Core-Mark is a Delaware corporation and has a principal place of business in Spokane, Washington.[8]  It "advertises, distributes and sells, on a wholesale basis, grade A pasteurized milk that has been processed outside of Montana into the State of Montana to numerous retail businesses in the State of Montana."[9]  In addition to milk, Core-Mark also distributes grocery items, fresh foods, beverages, tobacco, health and beauty care products, and general merchandise to convenience stores throughout Montana.[10]

Core-Mark's primary milk supplier is Dairy Gold in Spokane, Washington.[11] Dairy Gold of Spokane ("Dairy Gold") is the successor to Inland Northwest Dairies's ("Inland").  Inland and Dairy Gold of Seattle, Washington, were partners in an LLC.[12]  In the spring of 2008, Dairy Gold purchased Inland's 51% share of the partnership, and Inland became Dairy Gold.[13]

Dairy Gold is a processor of milk and receives milk from "the producers

---

[8] *See* Doc. 8, ¶ 5.

[9] Doc. 8, ¶ 24.

[10] *See* Hr'g Tr. vol. I at 14:9-16, 56:8-12 (Doc. 47 at 14, 56).

[11] *See* Hr'g Tr. vol. I at 56:13-15 (Doc. 47 at 56).

[12] *See* Hr'g Tr. vol. I at 84:19-25 (Doc. 47 at 84).

[13] *See* Hr'g Tr. vol. I at 84:19-25 (Doc. 47 at 84).

and/or farmers" daily.[14]  It pasteurizes, homogenizes, and packages the milk,

delivering it to Core-Mark daily, based on Core-Mark's order.[15]  Core-Mark

receives the milk from Dairy Gold, checks it in, stores it, and awaits orders from

its customers.[16]  Once Core-Mark receives the orders, it "fill[s] those orders,

load[s] them on a high tech, three temperature trailer delivery system, and

deliver[s] those goods to the store . . . normally within 24 hours."[17]

Defendants are or were members of the Montana Board of Livestock

("Board"),[18] the executive officer of the Montana Department of Livestock

("Department"),[19] and the Bureau Chief of the Milk and Egg Bureau.[20]  All are

sued in their official capacities.[21]

In 1980, Defendants promulgated two administrative rules at issue under

---

[14] Hr'g Tr. vol. I at 15:8-9 (Doc. 47 at 15).

[15] *See* Hr'g Tr. vol. I at 15:8-14 (Doc. 47 at 14-15).

[16] *See* Hr'g Tr. vol. I at 14:22-25 (Doc. 47 at 14).

[17] Hr'g Tr. vol. I at 4:22-15:3 (Doc. 47 at 14-15).

[18] *See* Mont. Code Ann. §§ 2-15-3101, 3102 (2015).

[19] *See* Doc. 8, ¶ 15.

[20] *See* Doc. 8, ¶ 16.

[21] *See* Doc. 8, ¶¶ 7-16.

authority granted by the Montana Legislature.[22]   Admin. R. Mont. § 32.8.202

states:

> (1) When 12 days or more have passed following
> pasteurization of a unit of grade A milk, there will be no
> quantities of that unit of milk sold or otherwise offered
> for public consumption.
>
> (2) No grade A pasteurized milk may be put in any
> container marked with a sell-by date which is more than
> 12 days after pasteurization of the milk for sale in
> Montana.
>
> (3) Unless otherwise agreed upon, the person who offers
> the milk for sale to the public is responsible for
> removing the milk at or before the expiration of the 12
> days.

Admin. R. Mont. §32.8.203 states:

> (1) Each container into which grade A pasteurized milk
> is placed for sale for public consumption must be marked
> with a pasteurized date and a sell-by date.
>
> > (a) The sell-by and pasteurized date will be
> > displayed in Arabic numerals or standard
> > abbreviations for day and month, which shows the
> > last day the milk may be sold as required by ARM
> > 32.8.202.
>
> (2) No person, other than the packager of the milk, may
> mark the package with a pasteurized date and a sell-by
> date without permission of the department of livestock.

---

[22] *See Core-Mark Int'l, Inc. v. Mont. Bd. of Livestock*, 329 P.3d 1278, 1289-90 (Mont. 2014).

The Department granted Inland an exemption to these two administrative rules by letter dated August 15, 2002.[23]  The Department allowed Inland to place two sell-by dates ("dual date") on milk containers sold directly to consumers in Montana retail settings, one date corresponding to Montana's 12-day sell-by date and one date corresponding to Washington State's sell-by date.[24]  Inland negotiated with the Department and the parties "agreed upon the exemption of the twelve day code [single date] as long as the font size and boldness of the two [different states'] codes were equal."[25]

The Department sent another letter to Inland and possibly others on May 6, 2003, clarifying and restating it "granted an exemption to Inland Northwest Dairies concerning the dating of product processed and packaged in [Inland's] Spokane plant and distributed in Montana."[26]  The Department allowed dual dating on paper and plastic milk packaging containers for milk sold to consumers at retail outlets.[27]  The letter reaffirmed that retailers bear the responsibility to make sure that milk offered for sale complies with Montana's code date requirement, the

---

[23] *See* Hr'g Ex. 101 (Doc. 28-5 at 2).

[24] *See* Hr'g Ex. 101 (Doc. 28-5 at 2).

[25] Hr'g Tr. vol. I at 75:10-14 (Doc. 47 at 75); *see also* Hr'g Ex. 101 (Doc. 28-5 at 2).

[26] Hr'g Ex. 102 (Doc. 28-5 at 3); *see also* Hr'g Tr. vol I at 78:6-9 (Doc. 47 at 78).

[27] *See* Hr'g Ex. 102 (Doc. 28-5 at 3).

Washington state code did not apply, and that Grade A milk may not be offered for sale after 12 days from the date of pasteurization.[28]  The letter did not limit where milk processed by Inland could be sold in Montana or who could distribute Inland's milk.[29]  At the time Inland received its dual dating exemption, Inland's milk was distributed in Montana "mainly [by] two wholesalers," United Retailer Merchants and Food Services of America.[30]

Plaintiff's representative testified that in the summer of 2006, Plaintiff was given verbal permission to distribute dual dated milk in Montana that it purchased from Inland.[31]  Inland itself never sold or distributed the milk to retail markets in Montana, but sold milk to distributors, like Core-Mark and others, who did.[32]  Once Core-Mark purchased the dual dated milk from Inland, it owned the milk.[33]  The transaction between Inland and Core-Mark was completed.  When Core-Mark

[28] *See* Hr'g Ex. 102 (Doc. 28-5 at 3).

[29] *See* Hr'g Tr. vol. I at 78:10-22 (Doc. 47 at 78).

[30] Hr'g Tr. vol. I at 76:14-17 (Doc. 47 at 76).

[31] *See* Hr'g Tr. vol. I at 67:17-68:8 (Doc. 47 at 67-68); *see also* Hr'g Tr. vol. I at 33:3-35:21 (Doc. 47 at 34-35).

[32] *See* Hr'g Tr. vol. I at 84:8-11 (Doc. 47 at 84); *see also* Hr'g Tr. vol. I at 76:20-22 (Doc. 47 at 76).

[33] *See* Hr'g Tr. vol. I at 57:19-20 (Doc. 47 at 57).

sold the packaged milk to the retailer, the retailer became the owner.[34]

Defendants rescinded Inland's dual date exemption by letter dated January 25, 2008.[35] It sent another letter to Inland, dated July 28, 2008, informing Inland that the Board decided to disallow the sale of dual dated milk in Montana.[36] The letter cautioned that milk containers "not in compliance with the Montana's sell-by labeling requirements will be subject to removal from sale . . . [and] Montana Statute allows for a monetary fine to be imposed on the processor of the milk product."[37] The letter also stated, "[t]o avoid these enforcement actions, please ensure that [Inland's] products sold into the State are in compliance with regulations prior to August 11, 2008."[38]

## DISCUSSION

To fulfill the standing requirements of Article III of the U.S. Constitution, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and

---

[34] *See* Hr'g Tr. vol. I at 57:19-20 (Doc. 47 at 57); *see also* Hr'g Tr. vol. 2 at 12:18-13:2 (Doc. 46 at 12-13).

[35] *See* Hr'g Ex. 104 ("As of February 15, 2008 all milk sold in Montana must meet all the requirements noted in the Administrative Rules for sell-by dating. Milk, which is not labeled properly by that date, will be removed from sale and disposed of.") (Doc. 28-5 at 5).

[36] *See* Hr'g Ex. 109 (Doc. 28-5 at 23).

[37] Hr'g Ex. 109 (Doc. 28-5 at 23).

[38] Hr'g Ex. 109 (Doc. 28-5 at 23).

-8-

particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision."[39]  Such are the "irreducible constitutional minimum[s] of standing."[40]  Federal courts are limited "to resolving 'Cases' and 'Controversies.'"[41]  That limitation in turn is supported by the principles of separation of powers.[42]

A plaintiff "'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"[43]  Claims brought by third parties who do not hold the right would amount to having federal courts "'decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'"[44]

---

[39] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[40] *Lujan*, 504 U.S. at 560 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

[41] *Lexmark Int'l, Inc.*, 134 S. Ct. at 1386 (quoting *Lujan*, 504 U.S. at 560).

[42] *Lexmark Int'l, Inc.*, 134 S. Ct. at 1386 (quoting *Lujan*, 504 U.S. at 560).

[43] *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v.Seldin*, 422 U.S. 490, 499 (1975)).

[44] *Kowalski*, 543 U.S. at 129 (quoting *Warth*, 422 U.S. at 500).

This Court has the independent obligation to *sua sponte* consider whether it has jurisdiction even when the parties do not raise it themselves.[45]  The Court must "deny its own jurisdiction . . . in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that [judicial] power, it is called to act."[46]  "[F]act[s] showing the existence of a justiciable 'case' or 'controversy' under Article III, must affirmatively appear in the record."[47]  "[B]ecause it is not 'sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings,' it follows that the necessary factual predicate may not be gleaned from the briefs and arguments themselves."[48]

If the Court is without jurisdiction under Article III, it does not have the

---

[45] *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546-47 (1986) (Court must consider standing and deny its own jurisdiction for lack of standing even if not noticed by either party.); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) ("Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases; . . . subject-matter jurisdiction must be considered by the court on its own motion, even if no party raises an objection." (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))); Fed. R. Civ. P. 12(h)(3).

[46] *Bender*, 475 U.S. at 546-47.

[47] *Bender*, 475 U.S. at 546-47 ("'[T]he presumption . . . is that the court below was without jurisdiction' unless 'the contrary appears affirmatively from the record.'" (quoting *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226 (1887))); *see also Warth*, 422 U.S. at 517-18 ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of court's remedial powers.").

[48] *Bender*, 475 U.S. at 546-47 (quoting *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883) and *Thomas v. Bd. of Trustees*, 195 U.S. 207, 210 (1904)).

authority to act.[49]  The Court "must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction" under Fed. R. Civ. P. 12(h)(3).

This Court lacks Article III jurisdiction to hear this case because Core-Mark lacks constitutional standing as a plaintiff.[50]  Evidence presented during the hearing and in the record confirms Core-Mark is not asserting its own rights, but instead, seeks to assert rights properly belonging to Inland, as the milk packager, by preventing Defendants from revoking the dual date exemption the Department and the Board granted to Inland in 2002 under Admin. R. Mont. § 32.8.203(2).

Under the plain text of Admin. R. Mont. § 32.8.203(2), the dual date exemption properly rests with Inland and its successor, Dairy Gold, as the entity that puts milk in the container and "mark[s] the package with a pasteurized date and sell-by date."[51]  Only the milk packager may seek and obtain permission from the Department to deviate from the administrative rules governing milk container

---

[49] *See Bender*, 475 U.S. at 549.

[50] Core-Mark also lacks standing as a third-party plaintiff because it does not fulfill the requirements under the exception to the general rule. *See* 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE §§ 101.40[1]-[3], 101.51[3][c][i]-[iii] (3d ed. 2015); *see also Kowalski*, 543 U.S. at 128-30 (plaintiff seeking third-party standing must also show: (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

[51] Admin. R. Mont. § 32.8.203(2) (2015); *see also* Hr'g Tr. vol. 2 at 66:10-67:24 (Doc. 46 at 66-67).

-11-

labeling.[52]

Core-Mark is a milk distributor, and Inland is a processor and packager of milk.[53] By letter, Defendants granted permission to Inland to dual date each milk container it processed at its Spokane processing facility. By letter, Defendants rescinded Inland's exemption. Inland itself never sold or distributed milk in Montana, as only distributors who purchased milk packaged by Inland distributed it to retail outlets in Montana.[54] Core-Mark testified it used the exemption the Board and Department gave to Inland to distribute milk in Montana.[55]

Core-Mark asserts it "is in fact a *de-facto* holder of the dual date exemption."[56] But Core-Mark has assumed the distribution role, not the role of a milk packager or processor. Even if Core-Mark and the Department had reduced their understanding that Core-Mark may distribute dual dated milk in Montana to a

[52] *See* Admin. R. Mont. § 32.8.203(2) (2015); Packager is not defined in the administrative rules or in Mont. Code Ann. § 81-23-101 (2015). The Court interprets the word in its ordinary meaning and analogous to the term "producer" as defined in Mont. Code Ann. § 81-23-101(j) (2015) as "a person who produces the milk for consumption in this state and sells it to a distributor."

[53] *See* Hr'g Tr. vol. I at 20:2-9 (Doc. 47 at 20); *see also* Mont. Code Ann. § 81-23-101(e)(i) (2015) defining "distributor" as "a person purchasing milk from any source, either in bulk or in packages, and distributing it for consumption in this state."

[54] *See* Hr'g Tr. vol. I at 76:20-22, 84:8-11 (Doc. 47 at 76, 84); *see also* Hr'g Tr. vol. 2 at 65:5-66:23 (Doc. 46 at 65-66).

[55] *See* Hr'g Tr. vol. I at 52:10-15 (Doc. 47 at 52).

[56] Doc. 55 at 16.

-12-

writing, it would not confer standing because Core-Mark is not a "packager" of milk under Admin. R. Mont. § 32.8.203 or a "producer" under Mont. Code Ann. § 81-23-101(j). There is no evidence in the record that the business identities of Core-Mark and Inland are linked in any way.[57] There is no evidence that Core-Mark is a "producer-distributor" as defined in Mont. Code Ann. § 81-23-101(l).[58] Core-Mark used the exemption granted to Inland to distribute milk to and conduct its own business transactions with retail convenience stores in Montana.

Core-Mark cannot bring itself within the ambit of the administrative rules at issue here. It has no capacity to sue. It is not a party to the controversy and is improperly attempting to assert Inland's rights. Core-Mark does not suffer a particularized injury in fact because the exemption lies with Inland as the "packager" of the milk. The controversy, if any, is between Inland and the Defendants named here. Neither Inland nor its successor, Dairy Gold, are parties to this suit.

## CONCLUSION

Core-Mark is not a proper plaintiff. The Court lacks subject-matter

---

[57] Hr'g Tr. vol I at 52:13-15 (Core-Mark got the "exemption based on a business transaction with Inland.") (Doc. 47 at 52).

[58] Mont. Code Ann. § 81-23-101(l) (2015) defines "producer-distributor" as "a person both producing and distributing milk for consumption in this state."

jurisdiction under Article III and may not issue advisory opinions. It does not

have the requisite jurisdiction to decide the merits of Plaintiff's motion.

ORDERED:

1.    This case is DISMISSED.

2.    Plaintiff's Renewed Motion for Temporary Restraining Order and

Preliminary Injunction[59] is DENIED as moot.

DATED this 31st day of August, 2015.

SAM E. HADDON
United States District Judge

---

[59] Doc. 13.

-14-