# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION



FILED

NOV 01 2018

Clerk, U.S. District Court
District Of Montana
Helena

| | |
|---|---|
| CORE-MARK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> The Montana Board of Livestock, in its official capacity as head of the Montana Department of Livestock, et al., <br><br> Defendants. | No. CV 15-05-H-SEH <br><br> **MEMORANDUM AND ORDER** |

Before the Court are: (1) Plaintiff's Motion for Summary Judgment;[1] and (2) Defendants' Motion for Summary Judgment.[2] A hearing on both was held on September 27, 2018.

## Background

Plaintiff Core-Mark International, Inc., ("Core-Mark"), is a sales and marketing company that distributes and sells grade A pasteurized milk in Montana.[3] This action was brought against the Montana Board of Livestock ("the

---

[1] Doc. 106.

[2] Doc. 103.

[3] *See* Doc. 105 at 2.

Board") in its official capacity as department head of the Montana Department of Livestock ("the Department"), the Chairman of the Board and members of the Board in their official capacities, and others (collectively "the State").[4] Counts I through IV were dismissed with prejudice.[5] Only Count V alleging violation of the First Amendment of the United States Constitution remains.[6]

Core-Mark alleges that the milk labeling regulations promulgated by the Board violate its First Amendment commercial speech rights.[7] It seeks declaratory and injunctive relief as to all defendants.[8]

Grade A milk sold in Montana must be labeled with a "code date" no more than 12 days after the date of pasteurization.[9] In addition, Mont. Admin. R. § 32.8.203(1), as interpreted by the Board, prohibits the sale of milk in containers

---

[4] *See* Doc. 88.

[5] *See* Doc. 102.

[6] *See* Doc. 102.

[7] Doc. 88 at 34.

[8] Doc. 88 at 34.

[9] *See* MONT. ADMIN. R. § 32.8.202(2) (2018). A "code date" as interpreted and used by the parties is a component of a label placed on milk cartons that provides a notice or notices individually or in combination to the seller and to the consumer of a "sell by," a "best by," or a "best if used by" date or dates for the product.

-2-

labeled with any code date other than a sell-by date and pasteurization date.[10] This requirement has been referred to as the "Single Date Rule."[11]

Relevant facts material to the issues before the Court are not disputed.

## Undisputed Facts

1. "The Board promulgates administrative rules regulating milk sales on behalf of the Department."[12]

2. In 2002, the Department granted Core-Mark's predecessor-in-interest, Inland Northwest Dairies ("Inland"), an exemption to the single-date rule, permitting it to include an additional expiration date set by the processor.[13] Core-Mark assumed Inland's Montana distribution in 2006.[14]

3. The single-date exemption was revoked by the Department on January 25, 2008.[15]

---

[10] See Doc. 105 at 10–11.

[11] Doc. 105 at 11.

[12] Doc. 105 at 4.

[13] See Doc. 105 at 11.

[14] See Doc. 150 at 11.

[15] See Doc. 105 at 11.

4. On May 29, 2008, Core-Mark filed suit against the Defendants challenging constitutionality of the Single Date Rule.[16] A Memorandum of Understanding ("MOU") was executed by the parties to the suit which contemplated dismissal of the case upon conditions, including that the single date exemption remain in place pending completion of an administrative proceeding.[17]

5. On October 27, 2011, an administrative hearing officer issued a proposed decision recommending repeal of the Single Date Rule.[18] On May 30, 2012, the Board voted to reject the hearing officer's recommendation and to retain the rule.[19] Core-Mark then sought judicial review of the Board's decision, which was affirmed by the district court.[20] The Montana Supreme Court in turn affirmed the district court, finding the Board's decision to uphold the Single Date Rule was appropriate.[21]

6. On December 24, 2014, the Department ended the single-date

---

[16] See Doc. 105 at 12.

[17] See Doc. 105 at 12.

[18] See Doc. 105 at 13.

[19] See Doc. 105 at 13.

[20] See Doc. 105 at 14.

[21] See Doc. 105 at 14.

exemption. Core-Mark's Complaint in this lawsuit was filed on January 1, 2015.[22]

7. If reasonable handling and storage conditions are observed milk should remain fresh and fit to drink for a period ranging from 16 to 21 days after pasteurization.[23]

8. Milk processors perform shelf-life testing of the milk they process and distribute, which allows determination to be made of an appropriate label code date based on milk quality, freshness, and palatability.[24]

9. The administrative rules at issue in this case[25] were not adopted to protect the health or safety of consumers, it being agreed that: (1) the pasteurization process effectively eliminates potential harm; and (2) milk will become unpalatable before it will endanger human health or safety.[26]

## Discussion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[22] Doc. 1.

[23] *See* Doc. 105 at 21.

[24] *See* Doc. 105 at 25.

[25] *See* MONT. ADMIN. R. §§ 32.8.200–32.8.206 (2018).

[26] *See* Doc. 105 at 19.

as a matter of law."²⁷ The record before the Court supports the conclusion that the cross-motions are to be granted in part and denied in part.

**Qualified Immunity, Res Judicata, and Eleventh Amendment Immunity**

The State asserts this action is barred by res judicata – specifically that the First Amendment claim of Count V could have been raised in the prior state court action, and that a valid final judgment precluding relitigation of the issue was entered by the Montana Supreme Court.²⁸

"To determine the preclusive effect of a state court judgment federal courts look to state law."²⁹ "'The doctrine of res judicata prohibits relitigation of a cause of action once a final judgment has been entered. Once there has been a full opportunity to present an issue for judicial decision in a given proceeding, the determination of the court in that proceeding must be accorded finality as to all issues raised or which fairly could have been raised, else judgments might be attacked piecemeal and without end.'"³⁰ Under Montana law, res judicata requires

---

²⁷ Fed. R. Civ. P. 56(a).

²⁸ *See Core-Mark Int'l, Inc. v. Mont. Bd. Of Livestock*, 329 P.3d 1278 (Mont. 2014).

²⁹ *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (citing *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993)).

³⁰ *Belanus v. Potter*, 394 P.3d 906, 911 (Mont. 2017) (quoting *Olympic Coast Inv., Inc. v. Wright*, 105 P.3d 743 (Mont. 2005) (citations omitted)); *See also Wiser v. Mont. Bd. of Dentistry*, 251 P.3d 675, 679 (Mont. 2011) ("*[R]es judicata* bars not only issues that were actually litigated,

that: "(1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the parties are the same to the subject matter and issues between them.[31] It applies after a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction.[32]

The prior proceedings in *Core-Mark International, Inc. v. Montana Board of Livestock*[33] grew out of a negotiated and executed MOU between the Department and Core-Mark, which "outline[d] their respective rights, duties, obligations, and responsibilities during the suspension [of Plaintiff's 2008 federal lawsuit]."[34] The MOU directed that the federal lawsuit remain suspended while Core-Mark submitted a petition for amendment or repeal of the rules at issue to the

---

but also those that *could have* been litigated in a prior proceeding.") (quoting *State ex rel. Harlem Irrigation District v. Mont. Seventeenth Judicial Dist. Court*, 894 P.2d 943, 946 (1995)).

[31] *See Wiser*, 251 P.3d at 677 (Mont. 2011) (citing *Somont Oil Co., Inc. v. A & G Drilling, Inc.*, 199 P.3d 241 (Mont. 2008)).

[32] *See Wiser*, 251 P.3d at 677 (Mont. 2011) (citing *Baltrusch v. Baltrusch*, 130 P.3d 1267 (Mont. 2006)).

[33] 329 P.3d 1278 (Mont. 2014).

[34] Doc. 105-13 at 2.

Department under Mont. Code Ann. § 2–4–315, which in turn provided a process to request promulgation, amendment, or repeal of an administrative rule.[35]

On appeal, the Montana Supreme Court specifically characterized the petition before it as an administrative "rulemaking" procedure, not a "contested case,"[36] and that such a proceeding was "pursuant to the Board's discretionary authority to consider proposed amendments to generally applicable rules. It was not a legally mandatory proceeding to determine the legal rights of one party."[37] The proceeding was limited, at the time of review, to whether the agency decision was "'arbitrary, capricious, unlawful, or not supported by substantial evidence.'"[38]

Given the narrow scope of judicial review available in *Core-Mark*, it is clear that neither the subject matter of the action nor the capacities of the parties were sufficiently similar to those in this lawsuit to warrant application of res judicata principles.

---

[35] Doc. 105-13 at 2; *See also Core-Mark*, 329 P.3d at 1282 (Mont. 2014).

[36] *Core-Mark*, 329 P.3d at 1282.

[37] *Core-Mark*, 329 P.3d at 1282.

[38] *Core-Mark*, 329 P.3d at 1286 (quoting *Clark Fork Coalition v. Mont. Dept. Of Envl. Quality*, 197 P.3d 482, 487 (Mont. 2008)).

The State also argues that it is entitled to qualified immunity,[39] which "protects government officials 'from liability for *civil damages* insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[40] "'Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.'"[41]

Here, Core-Mark seeks only declaratory and injunctive relief against the individual defendants, sued in their official capacities.[42] Qualified immunity has no application in this case.

The State also claims that the Eleventh Amendment bars suit against the Board, which forbids unconsented lawsuits in federal court against states or the arms or instrumentalities of states.[43] Case law precedent also supports the principle

---

[39] Doc. 104 at 19–22.

[40] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added)).

[41] *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (quoting *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989)). *See also Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1176 (9th Cir. 1984).

[42] While Core-Mark is seeking attorneys' fees under 42 U.S.C. § 1988, such fees are "ancillary to a grant of prospective [injunctive] relief." *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[43] U.S. CONST. amend. XI; *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).

that certain government boards can constitute agencies which are "arms" of the state and thus protected from suit.[44]

Dismissal of the Board on Eleventh Amendment grounds, however, would have no practical effect, as the individual members of the Board have also been sued in their official capacities.[45] Whether the board is entitled to immunity is a distinction without a difference.[46] Members of the Board are properly named as defendants. They are not entitled to Eleventh Amendment immunity from Plaintiff's request for injunctive and declaratory relief.

## **The Sell-By Date Requirement**

The parties have stipulated that the protected speech claimed in this case is commercial speech.[47]

The allowable parameters of compelled commercial speech are defined and analyzed under the test outlined in Zauderer v. Office of Disciplinary Counsel of

---

[44] See Rounds v. Or. State Bd. of Higher Educ., 166 F.3d 1032, 1035 (9th Cir. 1999) (finding that a suit against the Oregon State Board of Higher Education is for Eleventh Amendment purposes a suit against the state) (quoting Peters v. Lieuallen, 693 F.2d 966, 970 (9th Cir. 1982)).

[45] Doc. 88.

[46] Plaintiff acknowledges this in its briefing. See Doc. 109 at 13–14.

[47] Doc. 105 at 15.

*the Supreme Court of Ohio*.[48] There the Supreme Court held that the government may compel purely factual and uncontroversial information related to a substantial governmental interest that is not unjustified or unduly burdensome.[49] Whether a particular requirement is unjustified or unduly burdensome depends upon whether it is "reasonably related" to the State's substantial interest.[50]

The specific issue in *Zauderer* was whether an Ohio State Bar rule that required all attorney advertising to "inform clients that they would be liable for costs (as opposed to legal fees) even if their claims were unsuccessful" could be upheld.[51] In addressing the issue the Court determined that the required disclosure was "purely factual and uncontroversial," and that the speaker's protected interest in refraining from providing additional information was minimal.[52] Moreover, the weight of authority from other courts strongly suggests the *Zauderer* analysis applies equally to all forms of government-mandated speech.[53]

---

[48] 471 U.S. 626 (1985).

[49] *See Zauderer*, 471 U.S. 626.

[50] *Zauderer*, 471 U.S. at 651.

[51] *Zauderer*, 471 U.S. at 633.

[52] *Zauderer*, 471 U.S. at 651.

[53] *See, e.g., Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 22 (D.C. Cir. 2014) (finding the reasoning in *Zauderer* "inherently applicable beyond the problem of deception, as other circuits have found."). *See also Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 316 n. 8

In this case, the 12-day sell-by date requirement concerns factual and uncontroversial information similar to that mandated in *Zauderer*. The dating requirement compelled by Mont. Admin. R. § 32.8.203 merely reflects the twelfth day from the date a carton of milk is pasturized.[54] The information is definite and determinable. It does not constitute an opinion, and cannot reasonably be considered controversial.

Whether the present labeling requirement is reasonably related to a substantial state interest and not unduly burdensome must also be addressed.[55] Health, safety, and welfare has long been recognized to constitute a substantial

---

(1st Cir. 2005); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001); *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 556 (6th Cir. 2012).

[54] The full text of Mont. Admin. R. § 32.8.203(1) states:

<u>32.8.203 LABELING OF MILK CONTAINERS TO SHOW THE PASTEURIZED DATE AND LAST DAY OF LEGAL SALE</u>

(1) Each container into which grade A pasteurized milk is placed for sale for public consumption must be marked with a pasteurized date and a sell-by date.

(a) The sell-by and pasteurized date will be displayed in Arabic numerals or standard abbreviations for day and month, which shows the last day the milk may be sold as required by ARM <u>32.8.202</u>.

[55] *See Zauderer*, 471 U.S. at 651.

governmental interest.[56] Here, the State asserts that the sell-by date requirement "ensure[s] that Montana consumers are allocated a reasonable amount of time to bring the milk home and enjoy it completely before it begins to lose its freshness or palatability."[57]

The State seeks to further the welfare of milk drinking consumers in Montana by affording a reasonable period of freshness to consumers while allocating waste to the retailer of milk. This requirement is reasonably related to the corresponding provision of Mont. Admin. R. § 32.8.202(1) as a written expression of the State's milk sale policy, which ensures that consumers are likely to purchase grade A pasturized milk early in the milk's freshness period.[58] Requiring a sell-by date merely assists milk retailers in determining when to dispose of milk in accordance with the rules. Mont. Admin. R. § 32.8.202 is reasonably related to the State's interest in providing a longer period of freshness to the consumer.

Is the required disclosure mandated by the sell-by date requirement unduly burdensome? The answer is "no."

---

[56] *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 341 (1986).

[57] Doc. 104 at 12.

[58] *See* Doc. 105 at 21.

Earlier cases which found an undue burden on protected commercial speech in the First Amendment context have involved, *inter alia*, laws requiring advertisers to provide detailed disclosures in every advertisement,[59] or that required a font "that is so large that an advertisement can no longer convey its message,"[60] or that mandated that television advertisements devote one-sixth of their broadcast time to a government message.[61] In contrast, the burden in this case is comparatively minimal, requiring only a non-obtrusive, factually accurate date stamp be applied to milk cartons. The subject rule does not force the milk processor "to tailor its speech to an opponent's agenda,"[62] nor does it require the statement of a one-sided and misleading message.[63] The compelled speech here is minimal in context and reasonably related to the State's interest. It is not unduly burdensome. The sell-by dating required by Mont. Admin. R. § 32.8.202 does not violate Plaintiff's freedom of speech under *Zauderer*.

### **The Single Date Rule**

---

[59] *See Ibanez v. Florida Dept. of Bus. and Prof'l Regulation*, 512 U.S. 136, 146 (1994).

[60] *Pub. Citizen, Inc. v. Louisiana Attorney Disciplinary Bd.*, 632 F.3d 212, 228 (5th Cir. 2011).

[61] *See Tillman v. Miller*, 133 F.3d 1402, 1404 n.4 (11th Cir. 1998).

[62] *Pac. Gas and Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 10 (1986).

[63] *Pac. Gas and Elec. Co.*, at 15 n. 12.

Plaintiff also contends that Mont. Admin. R. § 32.8.203(1), as interpreted and applied by the Board, completely prohibits further date information other than that mandated by Mont. Admin. R. § 32.8.203(1) and unconstitutionally infringes on its freedom of speech. In this instance the Court agrees.

To prohibit lawful, non-misleading commercial speech, the State must establish that: (1) the prohibition is supported by a substantial governmental interest; (2) the substantial interest is directly advanced by the prohibition; and (3) the prohibition is not more extensive than necessary.[64] The government interest must be advanced in a "direct and material way."[65] It cannot be satisfied "by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that it's restriction will in fact alleviate them to a material degree."[66] This particular inquiry is critical, lest the State be allowed to "restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression."[67]

---

[64] *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

[65] *Edenfeld v. Fane*, 507 U.S. 761, 767 (1993).

[66] *Edenfeld*, 507 U.S. at 770-71.

[67] *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995).

The State concedes that Core-Mark, if allowed to provide an additional code date on grade A pasteurized milk, would seek only to disclose truthful, verifiable, and non-misleading information.[68] Further, it is undisputed that the current prohibition on additional labeling is unrelated to protecting health and safety. The restriction appears solely based on concerns of "freshness."[69]

The State argues that by allowing other dating on labels in addition to a "sell-by" and a pasteurization date, milk labeling in Montana would be less consistent, and that processors might use a variety of different terms in their labeling which would lead to confusion among consumers.[70] However, the First Amendment requires that the Court be "especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good."[71] "Any 'interest' in restricting the flow of accurate information because of the perceived danger of that knowledge is anathema to the First Amendment; more speech and a better informed citizenry are among the central goals of the Free Speech Clause."[72]

---

[68] *See* Doc. 105 at 16.

[69] Doc. 105 at 19.

[70] Doc. 104 at 7–8.

[71] *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality opinion).

[72] *Rubin*, 514 U.S. at 497 (Stevens, J., concurring).

Here, the State's apparent concern is that "generations of Montanans" who have "grown up only knowing grade A pasteurized milk cartons with a single sell-by date" would find it "confusing" and "alienating" if presented with additional, useful information about their milk.[73] However, the State has provided no evidence that market confusion as asserted would ensue.

The State's argument is further contradicted by the fact that it previously allowed additional dating on milk by an out-of-state processor–between 2002 and 2008. No evidence in the record suggests that particular exemption resulted in confusion among consumers. The argument clearly does not satisfy the "substantial governmental interest" prong required by *Central Hudson*. It also suggests a low regard by state rulemakers for the ability of Montana consumers to make informed decisions when provided with purely factual information.

The State, in addition, argues that by prohibiting the labeling of milk with an additional label (such as a proposed code date) the State eliminates any risk that distributors will prolong or "overstate" their use-by dates for competitive advantage.[74] Defendants, however, again provide no evidence that such practices

---

[73] Doc. 104 at 11.

[74] Doc. 104 at 8–9.

would occur or have occurred in Montana or elsewhere. Nor has evidence been provided that a longer freshness period would be undesirable for consumers.

The State directs the Court to the testimony of former Spokane Division President Mark Huelskamp, who suggested there are "market incentives for milk processors to use technology to increase shelf life."[75] The fact that milk processors have a market incentive to advance the science of pasteurization does not lead to a conclusion that milk processors will fraudulently overstate their code dates in a conspiracy against the public. There is simply no evidence before the Court, beyond "mere speculation or conjecture," that the harm about which the State expresses concern is real.

The State has failed to identify a sufficient interest in restricting labels as required by Mont. Admin. R. § 32.8.203. It has failed to meet its burden under *Central Hudson*. The Board's interpretation of Mont. Admin. R. § 32.8.203, which prohibits further date information or code dating other than as mandated by the rule, violates Core-Mark's freedom of commercial speech.

ORDERED:

---

[75] Doc. 104 at 9.

The pending Cross-Motions for Summary Judgment[76] are GRANTED in part and DENIED in part as follows:

1. Defendants are entitled to continue to require, as a component of grade A milk labeling in Montana, the display of printed dates that include the date of pasteurization and the last day milk may be sold, as set out in Mont. Admin. R. § 32.8.203 and as required by Mont. Admin. R. § 32.8.202;

2. Defendants may not limit the labeling on grade A milk sold in Montana to exclude additional language approved by the Board informing consumers of a "best by" or "best if used by" date;

3. The parties shall meet and confer and propose to the Court on or before November 9, 2018, an agreed upon form and content of the additional labeling to be approved by the Board to be placed on grade A cartons together with the presently used label;

4. If the parties fail to agree upon the form and content of the additional labeling as specified in paragraph 3, each shall submit its suggested language for the label to the Court on or before November 15, 2018; and

---

[76] Docs. 103 and 106.

5.  Final decision and judgment on all issues presented by the pending motions are reserved pending further necessary and appropriate proceedings and orders of Court.

DATED this 1st day of November, 2018.

*Sam E. Haddon*
SAM E. HADDON
United States District Judge